
**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ANDREW BEAUCHEMIN<br><br>Plaintiff,<br><br>v.<br><br>WOLF COMMERCIAL REAL ESTATE LLC & WCRE CAPITAL ADVISORS LLC<br><br>Defendants | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 24-99 (KMW-EAP)<br><br>**OPINION** |

APPEARANCES:

ERIC J. RISO, ESQ.
ZELLER & WIELICZKO, LLP
120 HADDENTOWNE COURT
CHERRY HILL, NJ 08034

    *Counsel for Plaintiff Andrew Beauchemin*

ADAM EDWARD GERSH, ESQ.
FLASTER/GREENBERG PC
1810 CHAPEL AVENUE WEST
CHERRY HILL, NJ 08002

    *Counsel for Defendants Wolf Commercial Real Estate LLC and WCRE Capital Advisors LLC*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

This matter comes before this Court on Defendants Wolf Commercial Real Estate LLC and WCRE Capital Advisors LLC's, ("Defendants"), Motion to Dismiss Plaintiff Andrew Beauchemin's, ("Plaintiff"), Amended Complaint. *See* Mot. to Dismiss, (ECF No. 17). Defendants assert that they did not breach the Independent Contractor Agreement, ("ICA"), by not paying a commission to Plaintiff after the sale of a property in New Jersey, (the "Property"). *See id.* In response, Plaintiff moved to strike Defendants' Motion to Dismiss in his Opposition, (ECF No. 18), asserting that Defendant's Motion to Dismiss was untimely and was not responsive to the Amended Complaint. *See* Opp. at 6-8. Defendants replied to Plaintiff's Opposition. *See* Reply, (ECF No. 19). For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion to Strike.

## II. BACKGROUND

On August 1, 2019, Plaintiff and Defendants entered into the ICA, through which Plaintiff agreed to perform commercial real estate sales and brokerage services for Defendants. *See* Amended Compl. ¶¶ 8-9. According to the terms of the ICA, Plaintiff was eligible to receive commissions for his services, including post-termination commissions "in the event of Plaintiff's separation from Defendants pending an active real estate transaction." *Id.* ¶ 10. The ICA states that Plaintiff is only entitled to the post-termination commissions set forth by Schedule B, when "termination [occurs] during an active deal." *Id.* ¶¶ 10, 12. The ICA does not define "active deal," nor does it reference the term in any other section. *Id.* ¶ 13

On November 14, 2019, Plaintiff, in his capacity as an Individual Contractor, received a sales lead for the Property to sell, and informed the Defendants of the potential brokerage

opportunity. *Id.* ¶ 14. Plaintiff asserts that in January and February 2020, he and Defendants strategized, inquired about the Property, and negotiated brokerage relationship terms. *Id.* ¶¶ 15-16.

On February 25, 2020, Defendants and the Property owner executed an Exclusive Sale Listing Agreement, ("Listing Agreement"), that expired on August 24, 2020. *Id.* ¶¶ 17-18. The Listing Agreement included a "Survival Period," which entitled Plaintiff to still receive commission within 120 days of expiration of the Listing Agreement term if the Property was sold, a purchaser was "procure[d]," the Property owner entered a sales contract, or if there were ongoing negotiations within that period that led to a sale of the Property. *Id.* ¶ 19, Ex. B ¶¶ 2, 4.

Plaintiff negotiated the Listing Agreement terms with the seller and created marketing materials, in which he was named as one of the "listing brokers." *Id.* ¶¶ 20-21. After Defendants confirmed that Plaintiff was responsible for marketing the Property to potential buyers, Plaintiff spent "significant time and effort" listing the Property on websites. *Id.* ¶ 21, 23. By May 20, 2020, the Property was listed for sale on "multiple platforms" and was "actively marketed to the public as 'for sale' for approximately 751 consecutive days." *Id.* ¶ 23. On May 24, 2020, Plaintiff terminated the ICA with Defendants. *Id.* ¶ 22. On June 16, 2020, Plaintiff and Defendants agreed that Plaintiff's New Jersey Real Estate Salesperson license, ("License"), would remain with Defendants in case of future brokerage opportunities. *Id.* ¶ 24.

The Amended Complaint does not allege activity of any kind until nearly one year later. On June 2, 2021, Plaintiff paid Defendants $100.00 to renew his License for two years. *Id.* ¶ 25. Then, on September 20, 2021, Plaintiff was contacted by Millennium Interstate Realty, ("Millennium"), a buyer-broker, inquiring about the Property in response to the listing that named Plaintiff as a point of contact. *Id.* ¶ 26. After discussing the listing with Millennium,

3

Plaintiff sent the Defendants Millennium's contact information. *Id.* Defendants did not respond. *Id.*

On May 20, 2022, eight months after Plaintiff forwarded Millenium's information, and nearly two years after Plaintiff terminated the ICA, the Property was sold to Millennium's client for $17,000,000. *Id.* ¶¶ 26-27. Defendants earned a $255,000.00 commission from that sale. *Id.* ¶ 27. On June 9, 2022, Plaintiff reached out to Defendants for an update on the Property and to discuss commissions. *Id.* ¶ 29. Defendants did not respond. *Id.* Plaintiff asserts that on June 21, 2022, Defendants advertised the sale for marketing purposes. *Id.* ¶ 30.

On October 25, 2024, this Court dismissed Plaintiff's original Complaint without prejudice because Plaintiff did not allege that he was engaged in an "active deal" when he terminated the ICA. On November 22, 2024, Plaintiff filed an Amended Complaint, asserting only one count: Breach of Contract. On December 12, 2024, Defendants filed a Motion to Dismiss the Amended Complaint. Plaintiff opposed by filing a Motion to Strike on December 20, 2024, and Defendants replied on December 30, 2024. Thus, Defendants' Motion to Dismiss and Plaintiff's Motion to Strike are ripe for adjudication.

### III.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

Generally, a district court may consider: allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester Cnty. Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)). Thus, a court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington*, 114 F.3d at 1426).

## IV. DISCUSSION

### A. Motion to Strike

The Court will first address Plaintiff's Motion to Strike. Plaintiff moves to strike Defendants' Motion to Dismiss because Plaintiff contends the motion was untimely, and because the Motion maintained arguments on counts that were not included in the Amended Complaint. *See* Opp. at 6-8.

Pursuant to Fed. R. Civ. P. 12(f), "a 'court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Shaikh v. Internal Revenue Serv.*, No. 3:18-17695, 2020 WL 13828564, at *2 (D.N.J. May 29, 2020) (quoting Fed. R. Civ. P. 12(f)). "Motions to strike are decided on the pleadings alone" and courts "exercise 'considerable discretion'" when assessing them. *Deery v. Crystal Instruments Corp.*, No. 13-198, 2013 WL 4517867, at *1 (D.N.J. Aug. 26, 2013) (quoting *Tonka Corp. v. Rose Art Industries, Inc.*, 836 F. Supp. 200, 217 (D.N.J.1993)). Since such motions are viewed as severe measures, they are ordinarily "denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Tonka Corp.*, 836 F. Supp. at 217 (citation omitted). Therefore, motions to strike are "highly disfavored" by the courts and "granted sparingly." *Eisai Co. v. Teva Pharms. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009) (citation omitted). Further, the Court notes that the Third Circuit prefers adjudications "on the merits," rather than on procedural matters. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990).

Here, Plaintiff moves to strike Defendants' Motion to Dismiss for two reasons. First, Plaintiff asserts that Defendants' Motion was untimely. *See* Opp. at 6. Plaintiff filed his Amended Complaint on November 11, 2024, and Defendants filed their Motion to Dismiss on December 12, 2024. *Id.* Pursuant to Fed. R. Civ. P. 15(a)(3), a party is required to file a motion to dismiss "within 14 days after service of the amended pleading," but here, Defendants filed their Motion six days past the fourteenth day after the Amended Complaint was served. Fed. R. Civ. P. 15(a)(3). However, the Court has discretion as to whether a sanction will be imposed due to a party's untimely filing: "[t]he Court *may* reject any brief or other paper not filed within the time specified." *See* L. Civ. R. 7.1(d)(7). The Court also remains mindful of the Third Circuit's

preference to adjudicate "on the merits." *See Dole*, 921 F.2d at 486-87. Therefore, the Court will not reject Defendant's late filing.

Second, Plaintiff contends that Defendants' Motion was "misleading" because Defendants included arguments related to unjust enrichment and breach of the covenant of good faith and fair dealing, despite those claims being dismissed with prejudice and not being present in the Amended Complaint. *See* Opp. at 8. However, while the Court appreciates Plaintiff's interest in efficient adjudication and attention to detail, Defendants' mistaken inclusion of dismissed claims does not meet the standard for granting a motion to strike. *See Tonka Corp.*, 836 F. Supp. at 217 (citation omitted). Therefore, Plaintiff's Motion to Strike is denied.

### B. Motion to Dismiss – Contract Interpretation[1]

The Court now turns to Defendant's Motion to Dismiss. "[T]o survive a motion to dismiss, plaintiff must properly plead the elements of a [breach of] contract claim: the existence of a contract and its essential terms, a breach of a duty imposed by the contract, and resultant damages." *Tekman v. Berkowitz*, No. 12-2932, 2014 WL 1681967, at *3 (E.D. Pa. Apr. 28, 2014) (citation omitted). Here, Plaintiff and Defendants agree on the contract's existence, (the ICA), and the presence of its essential terms. *See* Amended Compl. ¶ 8. However, the parties disagree on whether there was a breach, namely whether the Defendants breached the ICA by not paying Plaintiff a commission based on the sale of the Property.[2] *Id.* ¶ 37.

Plaintiff asserts that when he terminated the ICA on May 24, 2020, he did so while working on an "active deal" involving the Property, given that the Property's listing was active at that time and remained active until it attracted the eventual buyer. *Id.* ¶ 23. To support the assertion that he was involved in an "active deal," Plaintiff points to the following activities: that

---

[1] Pursuant to the ICA, Pennsylvania law governs. *See* Amended Compl, Ex. A ¶ 17(e). The parties do not dispute that Pennsylvania law applies.
[2] Plaintiff and Defendants also disagree on there being resultant damages, given the disagreement regarding breach.

7

he listed the Property on May 20, 2020, renewed his License on June 2, 2021, and interfaced with Millennium, who was ultimately involved in the sale, on September 20, 2021. *See id.* ¶¶ 23-27. Those events all took place within the near two-year gap between the termination of the ICA and the sale of the Property. *Id.*

Defendants assert that there was no "active deal" when Plaintiff terminated the ICA, drawing a distinction between "active deal" and "active listing" and arguing that the limited activities Plaintiff points to do not demonstrate an "active deal." *See* Mot. to Dismiss at 5-6. Defendants argue that an "active deal" requires a "committed buyer" and claims that "[i]f the ICA meant that post-termination commissions were to be paid on all active listings, it would have said so." *Id.* at 6.

Thus, the Court notes that the parties have competing interpretations of the term "active deal," as stated in the ICA. Amended Compl. ¶ 12. However, the parties' subjective disagreement about the meaning of "active deal" alone holds little interpretive weight. *See Chambers v. Chesapeake Appalachia, L.L.C.*, 359 F. Supp. 3d 268, 275 (M.D. Pa. 2019) (citation omitted). Determining the presence of contractual ambiguity is a question of law. *See Materials Handling Enters., Inc. v. Atlantis Techs., LLC*, 563 F. Supp. 3d 387, 394 (W.D. Pa. 2021) (citation omitted). Whether a contract is ambiguous is dependent on whether the contract is susceptible of two reasonable alternative interpretations. *See Materials Handling Enters., Inc.*, 563 F. Supp. 3d at 394. While an assertion of ambiguity may require the Court to assess the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning, the plain meaning of the words used in the contract is ultimately controlling, not the "silent intentions" of the contracting parties. *Chambers*, 359 F. Supp. 3d at 275 (citation omitted). Where the written terms of the contract are

8

not ambiguous and can be only read one way, a court can interpret the contract as a matter of law. *Materials Handling Enters., Inc.*, 563 F. Supp. 3d at 394. Here, the Court holds that Plaintiff's interpretation of "active deal" is not reasonable, and thus, the Court can only read the contract one way: Defendants did not breach the ICA.

Pursuant to Pennsylvania law, when a court interprets a contract, it must determine the parties' "manifested, objective intent." *Chambers*, 359 F. Supp. 3d at 275 (citation omitted). As noted above, contract language is ambiguous when it "is reasonably susceptible of different constructions and capable of being understood in more than one sense," however, facially unambiguous contracts "must be interpreted according to the natural meaning of their terms." *Chambers*, 359 F. Supp. at 275 (quoting *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)); *Star Ins. Co. v. Reginella Constr. Co. Ltd.*, 685 F. App'x 118, 120 (3d Cir. 2017) (quoting *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 96 (3d Cir. 2001)). Thus, the Court should not "strain" to find an ambiguity when there is only one reasonable interpretation. *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 505 (E.D. Pa. 2014) (citations omitted); *see also Star Ins. Co.*, 685 F. App'x at 120-21 (affirming dismissal after finding Plaintiff's asserted interpretation of a contractual term did not establish an ambiguity); *Lenau v. Co-eXprise, Inc.*, 102 A.3d 423, 429 (Pa. 2014) (quoting *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004)) ("If left undefined, the words of a contract are to be given their ordinary meaning.").

Plaintiff's assertion that the ICA's failure to define "active deal" automatically creates an ambiguity is without merit. *See* Opp. at 11. While Plaintiff argues that his Property listing equates to an "active deal" pursuant to his interpretation, a "deal" and a "listing" are not synonymous. Defendants reasonably distinguish between the two, asserting that the ICA should

have included "post-termination commissions ... to be paid on all active listings" if that was its intention. *See* Mot. to Dismiss at 6. While both a "deal" and a "listing" may require a property and a seller, notably, a "deal" also requires a buyer. *See N. Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 675-77 (E.D. Pa. 2021) (referring to a real estate deal as a transaction involving a purchaser and seller); *see also Deal*, Black's Law Dictionary (12th ed. 2024) ("an act of buying and selling; the purchase and exchange of something"). Plaintiff does not assert that there was any buyer identified at the time he terminated the ICA. *See* Amended Compl. ¶ 22. Moreover, Plaintiff conceded that he would only be entitled to post-termination commissions "pending an active real estate transaction." *Id.* ¶ 10; *see N. Penn Towns, LP*, 554 F. Supp. 3d at 675-77 (describing a "transaction" as the purchase and sale of real estate). Plaintiff's interpretation of "active deal" fails, given the distinction between "deal" and "listing," and accordingly, "active deal" must be interpreted pursuant to its "natural meaning," requiring a buyer. *See Star Ins. Co.*, 685 F. App'x at 120 (quoting *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 96); *see also Deal*, Black's Law Dictionary (12th ed. 2024).

Despite the definitional distinction between deal and listing, Plaintiff asks the Court to infer that he was working on an "active deal" when he terminated the ICA because he negotiated the terms of the listing that was ultimately seen by Millennium. *See* Amended Compl. ¶¶ 20, 26, 36. Plaintiff impliedly suggests in the Amended Complaint that the ICA's "active deal" language may be satisfied through the active listing by asserting that the Property was "actively marketed to the public as 'for sale' for approximately 751 consecutive days," which began before he terminated the ICA. *Id.* ¶ 23. However, Plaintiff's listing being posted for 751 days does not support a finding of an "active deal." *Id.* Plaintiff's alleged marketing and listing activities were, at best, passive, as online listings require minimal maintenance after their initial

10

posting. *Id.* ¶ 23. Moreover, Schedule B's language in the ICA demonstrates that a "complete[d]...transaction" is the necessary outcome of an "active deal" present at the time of termination.[3] *Id.* ¶ 12. In turn, Plaintiff could not reasonably allege an "active deal" at the listing stage when the Property's "complete[d]...transaction" did not occur until nearly two years after it was listed. *Id.*

Alternatively, Plaintiff argues that he is entitled to commission under the Listing Agreement. *Id.* ¶ 19, Ex. B ¶¶ 2, 4. The Listing Agreement that Plaintiff negotiated with the Property seller before terminating the ICA listed certain activities that would entitle Plaintiff to a commission—if the Property was sold, a purchaser was "procure[d]", the owner entered a sales contract, or if there were ongoing negotiations that led to a sale of the Property—if such activities occurred within the "Survival Period" of 120 days after the Listing Agreement expired. *Id.* However, post-termination commissions were governed by the ICA, which stated that "[t]he only lease commission and sale commission that [Plaintiff] shall be entitled to after termination of this Agreement respectively shall be set forth on Schedule B," requiring Plaintiff to have been involved in an "active deal" to receive a commission. *Id.* ¶¶ 10-12. Accordingly, the Listing Agreement's commission-triggering clauses likely did not apply to Plaintiff once he terminated the ICA. *See id.*, Ex. B ¶¶ 2, 4.

Even if the Court were to assume that the Listing Agreement remained operative after Plaintiff terminated the ICA, there is no factual basis to support Plaintiff's argument that Defendants owe him commission from the Property sale. Plaintiff points to his License renewal and communication with Millennium to support his argument that he engaged in activities entitling him to a commission from the Property. Plaintiff's License renewal is not one of the enumerated, commission-triggering activities in the Listing Agreement. *See* Amended Compl. ¶

---

[3] The ICA stated that post-termination commissions were governed by Schedule B. Amended Compl. ¶ 10.

25, Ex. B ¶¶ 2, 4. More importantly, Plaintiff's renewal had no relevance to the sale of the Property. In addition, Plaintiff's communication with Millennium is insufficient to trigger a commission, pursuant to the Listing Agreement. *See id.* ¶ 26, Ex. B ¶¶ 2, 4. Plaintiff implies that talking to Millennium equates to "procur[ing] a purchaser" or initiating sales negotiations, pursuant to the Listing Agreement's "Survival Period." *Id.* However, Plaintiff does not assert facts to suggest this in his Amended Complaint. Rather, the factual averments indicate that he merely engaged in a preliminary discussion about the listing and then forwarded Millennium's contact information to Defendants. *Id.* ¶ 26. Without more, the Court cannot conclude that Plaintiff's communication with Millennium was sufficient to trigger a commission pursuant to the Listing Agreement. If anything, the Court could consider Plaintiff's communication with Millennium as a referral, governed by the ICA. *Id.* ¶ 11, Ex. A. But this avenue also fails to give Plaintiff what he seeks. Indeed, the ICA states that commissions earned as a referral source "shall be determined based on the judgment of the Broker," Defendants had complete discretion over the commission Plaintiff could earn from the Property sale, if any at all. *Id.*

Ultimately, it appears that Plaintiff wants the Court to infer that other activities must have taken place that would entitle Plaintiff to a commission, given that a sale of the Property eventually transpired. However, such is an unreasonable inference for the Court to make. *See Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). There is no basis pursuant to the ICA for Plaintiff to have earned a commission based on its terms, and it is dubious that the Listing Agreement would remain operative after Plaintiff's termination with Defendants. Even if the Court were to generously infer the Listing Agreement remained operative after the termination of the ICA, any commission-triggering activities would have been required to occur within 120 days of the Listing Agreement's expiration for Plaintiff to be entitled to a

12

commission, pursuant to the Survival Period clause. *Id.* Given that the Listing Agreement expired on August 24, 2020, Plaintiff must have engaged in commission-triggering activity by December 22, 2020, (120 days later), to earn commission under the Survival Period. *Id.* ¶ 18-19, Ex. B ¶¶ 2, 4. Plaintiff does not allege any facts to suggest that he engaged in any activity at all during Survival Period. The most compelling activity, his communication with Millennium, occurred nine months past the Survival Period's expiration on September 20, 2021. *Id.* ¶ 26. An actual deal was not consummated until May 20, 2022, seventeen months after the expiration of the Survival Period. *Id.* ¶ 27. The mere assertion that Plaintiff was involved in an "active deal," simply because a deal transpired, is not sufficient, and Plaintiff cannot overcome these facts. *See id.* ¶ 20, 36.

Plaintiff must provide more than legal conclusions couched as factual allegations to overcome a 12(b)(6) Motion to Dismiss. *Papasan*, 478 U.S. at 286. While the Court recognizes Plaintiff's continued interest in New Jersey real estate practice and in the status of Defendants' and Millennium's deal, there is no reasonable factual basis to establish that Plaintiff was working on an "active deal" when the ICA was terminated, nor that Plaintiff engaged in activities allowing for commissions under the Listing Agreement's "Survival Period." *Id.* ¶ 12. Therefore, Plaintiff cannot establish a breach of the ICA, and the Amended Complaint must be dismissed.

### C. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Motion to Strike is **DENIED**. An order consistent with this Opinion will be entered.

July 9, 2025

KAREN M. WILLIAMS, U.S.D.J.

Case 1:24-cv-00099-KMW-EAP	Document 21	Filed 07/09/25	Page 14 of 14 PageID: 286